UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICHOLAS ASHMON, # 573667,

        Petitioner,

v.                                        Case Number: 10-cv-12282
                                              Honorable John Corbett O'Meara

BARRY D. DAVIS,

        Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) DENYING REQUEST FOR AN EVIDENTIARY HEARING AS MOOT**

**I. INTRODUCTION**

This is a habeas case filed under 28 U.S.C. § 2254. Petitioner Nicholas Ashmon is a state inmate currently incarcerated at the Chippewa Correctional Facility in Kincheloe, Michigan.[1] He filed this habeas petition, through counsel, challenging his 2005 convictions for three counts of assault with intent to murder, MICH. COMP. LAWS § 750.83, one count of discharge of a firearm from a motor vehicle, MICH. COMP. LAWS § 750.234a, and one count of felony firearm, MICH. COMP. LAWS § 750.227b, following a jury trial in Wayne County circuit court. Petitioner was sentenced to three concurrent prison terms of thirteen to forty years for the assault

---

[1]Petitioner was incarcerated at the Newberry Correctional Facility when he originally filed his habeas petition; however, he has since been transferred to the Chippewa Correctional Facility. The proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated petitioner is the warden of the facility where the petitioner is incarcerated. Rule 2(a) of the Rule Governing § 2254 Cases; *see also Edwards v. Johns*, 450 F.Supp.2d 755, 757 (E.D. Mich. 2006). In most cases where a petitioner is transferred to a different facility after the petition has been filed, the Court would order an amendment of the case caption. However, because the Court is dismissing the petition in this case, it finds no reason to do so.

convictions, two to four years for the discharge-of-firearm conviction, and a consecutive two-year term for the felony-firearm conviction. In his habeas petition, he raises claims concerning his identification at lineup and the effectiveness of trial and appellate counsel. For the reasons stated below, the Court will deny the petition. The Court also will decline to issue Petitioner a certificate of appealability. As a result of the Court's decision, Petitioner's request for an evidentiary hearing will be denied as moot.

## II. BACKGROUND

Petitioner's troubles in this case arise because of a shooting that occurred in Detroit, Michigan on March 30, 2005. The shooter was in one vehicle and the three victims, Titus Petty, Ramir Jackson, and Justin Neely, were in another adjacent vehicle. The Petty group was part of an informal automobile club–the Special Vehicles Team or SVT. They would frequently take trips to Detroit neighborhoods to drive fast and recklessly.

Petty, Jackson, and Neely testified that Petitioner was the shooter. Petitioner also was identified at a lineup. Trial testimony revealed the following pertinent facts.

On the night in question, Petty, Jackson, and Neely were at a gas station, loitering. Petitioner and his friends, Tommy (last name unknown) and Stephen Martale, were also in the area. Petitioner was driving a red Chevy caprice. After seeing Petitioner, Petty, Jackson, and Neely began doing "donuts" with their cars. (One does a "donut" by accelerating quickly and then sharply turning the steering wheel clockwise and counter-clockwise.) Petty was driving a black Dodge stratus, with Jackson in the front passenger seat and Neely in the rear passenger seat. Petitioner exited the station after Petty.

Subsequently, Petitioner stopped his car on the side of the road opposite Petty's car. Petty's car was moving while Petitioner's car was not. As Petty's car approached Petitioner's car, several shots were fired from Petitioner's car. Neely was shot and Jackson got glass in his eye. Petty was unharmed. No arguments occurred between the people in the two cars.

Two days after the incident, Petitioner was arrested. He voluntarily waived his right to remain silent and his right to counsel. He did not deny that shots were fired from his car. He told the detective that he was driving the car, Martale was in the front passenger seat and Tommy was in the rear seat on the driver's side. He said Tommy was the person who fired the shots. He said, after the shots were fired, he made Tommy leave the car and then he went home. He said neither he nor Martale had a gun. Petitioner's statement was read into evidence.

Petitioner was then placed in a lineup. The lineup consisted of five people, two twenty-four-year-olds, a twenty-six-year-old, a thirty-year-old, and Petitioner, who was nineteen-years-old at the time. Petitioner weighed about 230 pounds. Two of the four in the lineup weighed about 160 pounds. An attorney was present. Petty and Jackson identified Petitioner as the shooter.

The prosecution's evidence that Petitioner was the shooter was based on the trial testimony of Petty, Jackson, and Neely. Gunshot residue testimony confirmed that the residue was found in the rear seat on the driver's side. No residue was found in the front passenger seat. However, the gunshot residue expert testified that if the gun was fired from the driver's seat, then it would not be unusual to find residue in the rear seat and not the front seats.

Petitioner did not testify.

The jury found Petitioner guilty as charged.

Following his convictions and sentences, Petitioner filed a direct appeal with the Michigan Court of Appeals, raising the following three claims: there was insufficient evidence to support his convictions, the lineup was unduly suggestive, and trial counsel was ineffective for failing to object to the unduly suggestive lineup. The Court of Appeals affirmed his convictions. *People v. Ashmon*, No. 265376, 2007 WL 486745 (Mich.Ct.App. Feb. 15, 2007). The Michigan Supreme Court denied his application for leave to appeal on July 30, 2007. *People v. Ashmon*, 479 Mich. 863, 735 N.W.2d 241 (2007).

Petitioner filed a post-conviction motion with the state trial court, raising the following claims: the lineup and the in-court identification violated his due process rights, he was denied the effective assistance of trial counsel because counsel failed to object to the lineup and failed to call a witness, and appellate counsel was ineffective for failing to raise those claims in his direct appeal. The trial court denied his motion. *People v. Ashmon*, No. 05-003842-01 (Wayne County Circuit Court, Feb. 20, 2009). The Court of Appeals denied his application for leave to appeal. *People v. Ashmon*, No. 293162 (Mich.Ct.App. Oct. 28, 2009). On April 27, 2010, the Michigan Supreme Court also denied his application for leave to appeal. *People v. Ashmon*, 486 Mich. 900, 780 N.W.2d 807 (2010).

On June 9, 2010, Petitioner filed this habeas petition.

### III.  DISCUSSION

### A.  Standard of Review

Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (citations omitted).

Recently, the Untied States Supreme Court held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, --- U.S. ---, ---, 131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court

emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Section 2254(d) does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, but rather, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment)).

Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, --- U.S. at ---, 131 S.Ct. at 786-87.

### B. Procedural Default

Respondent first argues that Petitioner's ineffective-assistance-of-counsel claims regarding counsel's failure to investigate and to call an eyewitness are barred by the procedural-default rule. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Here, the Court finds that the interests of judicial economy are best

6

served by addressing the merits of Petitioner's procedurally-defaulted claims.

### C. Petitioner's Claims

#### 1. Lineup Was Not Unduly Suggestive

Petitioner argues that his due process rights were violated because his pretrial lineup was impermissibly suggestive.

A pre-trial identification procedure violates the Constitution if "the confrontation conducted [in Petitioner's case] was so unnecessarily suggestive and conducive to irreparable mistaken identification that [he] was denied due process of law." *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967). Similarly, a subsequent in-court identification following an impermissibly suggestive pre-trial identification is unconstitutional if the pre-trial "identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). A suggestive lineup or photo array alone, however, does not require exclusion of identification evidence. "The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." *Manson v. Brathwaite*, 432 U.S. 98, 106 (1977) (footnote omitted). The key, however, is whether there was "a very substantial likelihood of irreparable misidentification." *Id.* at 116 (citing *Simmons*, 390 U.S. at 384). Thus, the central question of when the pre-trial identification procedure is impermissibly suggestive, is "whether under the 'totality of the circumstances' the identification was reliable even though the [ ] procedure was suggestive." *Neil v. Biggers*, 409 U.S. 188, 199 (1972).

Five factors relevant to this "totality of the circumstances" analysis include "the

opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil*, 409 U.S. at 199-200. The Court engages in a balancing test, weighing the factors listed above against the "corrupting effect of the suggestive identification itself." *Manson*, 432 U.S. at 114. Thus, a court must "follow[ ] a two-step analysis in determining whether an identification is admissible." *United States v. Crozier*, 259 F.3d 503, 510 (6th Cir. 2001) (citing *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994)).

First the court must "consider whether the identification procedure was suggestive." *Crozier*, 259 F.3d at 510. If it was not, then the "identification testimony is generally admissible without further inquiry," and any question as to the reliability of the identification "goes to the weight of the evidence, not its admissibility." *Young v. Lafler*, 06-CV-10362, 2009 WL 777659, at *4 (E.D. Mich. Mar. 20, 2009) (citing *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d cir. 1990)). Thus, there would be no reason why counsel would have to move to suppress such a pre-trial identification. Second, if the procedure was suggestive, then the court must "determine whether, under the totality of the circumstances, the identification was nonetheless reliable and therefore admissible." *Id.* at *5 (citing *Crozier*, 259 F.3d at 510). "Reliability 'is the linchpin in determining the admissibility of identification testimony.'" *Id.* (citing *Manson*, 432 U.S. at 114).

The Court of Appeals rejected Petitioner's argument regarding this claim, stating:

> Defense counsel was present at the lineup, so the burden is on defendant to show that the lineup was impermissibly suggestive. Defendant points out that he was nineteen years old, while three of the men in the lineup with him were twenty-four years old, and the fifth man was thirty years old. Also, defendant weighed approximately 230 pounds at the time of the lineup, but two men in the lineup with him weighed only 160 pounds. An officer placed a large winter coat on one of the thinner men to make him look bulkier, but defendant argues that this was not enough to disguise his thinner build because the man's lower weight was still reflected in his face.
>
> However, the physical differences in age and weight would not be so substantial that the witnesses would pick defendant because of those differences rather than because they recognized him. First, while the participants were between nineteen and thirty years old, defendant did not describe any physical disparities, such as gray hair, that would distinguish defendant from any other participant. Second, while two of the participants weighed 160 pounds, one of those men wore a heavy coat, and two men did weigh a similar amount as defendant. In addition, all participants were seated when viewed by the witnesses; thus, their physical builds would not be as discernable as they would be if they were standing. Any physical differences would not substantially distinguish defendant from the other participants. Defendant has not carried his burden of showing that the pretrial lineup was impermissibly suggestive, and, therefore, the trial court did not err in its decision to admit the lineup identification evidence.

*Ashmon*, 2007 WL 486745, at *3.

Applying the law to the facts as set forth above, the Court agrees with the Court of Appeals and finds that there was no impermissibly suggestive procedure which tainted the identification of Petitioner as the perpetrator in this case. While there were some differences in age and weight among the lineup participants, the lineup was not so impermissibly suggestive that it led to a substantial likelihood of misidentification.

Furthermore, the witnesses had independent bases for their identifications of Petitioner as the shooter. Jackson testified that he saw the driver of the car shoot the gun, and, while he did not see the driver clearly, circumstantial evidence was presented from which the jury

9

could infer that Petitioner was the driver of the car. Jackson testified that he saw Petitioner driving the car at the gas station. Petitioner was the owner of that car. Petty testified that he actually saw Petitioner's face as he was sticking his arm out the window of his car. Petty and Neely also testified that Petitioner was the one holding the gun.

Moreover, the trial court instructed the jury regarding identification as follows.

> Now one of the issues in the case is the identification of the Defendant as the person who committed the offense. The prosecutor must prove beyond a reasonable doubt that the crime was committed and that the Defendant was the person who committed it.
> In deciding how dependable identification is, think about such things as how good a chance the witness had to see the offender at the time. How long the witness was watching. Whether the witness had seen or known the offender before. How far away the witness was. Whether the area was well lit, and the witnesses state of mind at the time.
> Think about the circumstances at the time of the identification such as how much time passed since the crime. How sure the witness was about the identification, and the witness's state of mind during the identification.
> You may consider any times that the witness identified the Defendant, made an identification, or gave a description that agree or did not agree with his or
> her identification during trial. You may consider whether other evidence support the identification, because then it may be more reliable.
> However, you may use the identification testimony alone to convict the Defendant as long as you believe the testimony and you find it proves beyond a reasonable doubt that the Defendant was the person who committed the crime.

Trial Tr. vol. V, 79-80 July 26, 2005.

Against that backdrop, the Court concludes that Petitioner has failed to meet his burden of establishing the existence of an unduly, suggestive identification procedure. The Court concludes that the state court's adjudication of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. Petitioner therefore has not demonstrated entitlement to relief with respect to this claim.

### 2. Counsel Was Not Ineffective for Failing to Object to the Lineup and Move to Suppress Identification Testimony

Intertwined with the above argument is Petitioner's contention that counsel at the lineup was ineffective for failing to object to the lineup and trial counsel was ineffective for failing to move to suppress the identification testimony.

To show that Petitioner was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth the two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Strickland*, 466 U.S. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The Court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland*, 466 U.S. at 694. Relative to a "reasonable probability,"

the question is whether the evidence which was not revealed, "taken as a whole, might well have influenced the jury's appraisal of [Petitioner's] culpability" and whether "the likelihood of a different result if the evidence had gone in is sufficient to undermine the confidence in the outcome' actually reached []." *Rompilla v. Beard*, 545 U.S. 374, 376 (2005) (internal quotations and citation omitted). "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (internal quotations and citation omitted). Although Petitioner was "not entitled to an attorney who will not leave the smallest stone unturned," the stones that he did have, "should at least [have been] nudged." *Bigelow v. Williams*, 367 F.3d 562, 573 (6th Cir. 2004) (quoting *Coleman v. Brown*, 802 F.2d 1227, 1234 (10th Cir. 1986)).

The Court of Appeals, in addressing this claim, found that counsel was not ineffective. As discussed in the first argument, *supra*, the state-court decision that the lineup was not unduly suggestive was not objectively unreasonable. Accordingly, neither lineup counsel nor trial counsel were ineffective when they failed to object to the lineup and subsequent identifications. Given that the lineup was not unduly suggestive, any objection would have been futile. When an issue is "without merit, counsel's failure to raise it does not constitute constitutionally ineffective assistance of counsel." *Collier v. Lafler*, No. 2009 WL 909587 (E.D. Mich. Mar. 31, 2009) (citing *Clemmons v. Delo*, 124 F.3d 944, 954 (8th Cir. 1997);*United States v. Cook*, 45 F.3d 388, 393 (10th Cir. 1995)). This is because counsel is not required to file frivolous or futile motions. *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984).

Thus, the Court concludes that Petitioner has failed to demonstrate deficient performance. He has not established that an objection would have been successful and would have kept all three witnesses from identifying him as the shooter. He has not shown that the lineup was unduly suggestive and that the three witnesses did not have an independent basis for identifying him as the shooter. He has not shown that, but for his attorney's failure to object to the lineup, there is a reasonable probability that the result of his trial would have been different.

Because the state-court adjudication was not contrary to, or an unreasonable application of, clearly established Supreme Court law, Petitioner has not demonstrated entitlement to habeas relief with respect to this claim.

### 3. Counsel Was Not Ineffective for Failing to Investigate and to Call An Eyewitness

Petitioner also claims that trial counsel was ineffective because he failed to call a witness, Martale Stephen. Stephen was the front-seat passenger in Petitioner's car. Petitioner argues that Stephen would have confirmed his statement that he was not the shooter in this case but the shooter was a person named Tommy, who was the back-seat passenger. Similarly, it is Petitioner's position that counsel was ineffective for failing to locate and investigate Tommy.

The record in this case demonstrates that trial counsel's decision to not call Stephen to testify that Tommy was the shooter did not deprive Petitioner of the defense at trial that Tommy was the shooter. The descriptions given by the witnesses to the police, including the clothing description, the color of the shirts, the presence or absence of a do-rag worn by the assailant as well as the gunshot residue found in the back seat of the car, all provided the defense with evidence that the shots emanated, not from the driver's seat where Petitioner sat, but from the

back seat where Tommy sat, as argued to the jury at trial by defense counsel. There also was evidence presented during the course of the trial that there were three people in Petitioner's car. The scientific evidence established that the gunshot residue was found only in the back seat, where the witnesses said that Tommy was seated.

Thus, evidence was presented, and the argument was made in closing, that Petitioner was not the shooter, but rather, Tommy was the shooter. That argument was buttressed by the testimony and the description of the witnesses as well as the scientific findings.

Moreover, Stephen's testimony would have been cumulative to that presented at trial–the three State's witnesses testified that Petitioner was the driver of the car.

With that, the Court finds that counsel's failure to call Stephen or Tommy did not sufficiently prejudice Petitioner. The failure to produce additional witnesses who would have provided cumulative evidence does not establish ineffective assistance. *Mills v. Lafler*, No. 08-14778, 2011 WL 2600993, at *14 (citing *Parker v. Allen*, 565 F.3d 1258, 1279 (11th Cir. 2009) (citing *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1324 n.7 (11th Cir. 2002) (per curiam), *cert. denied*, --- U.S. ---, 130 S.Ct. 1073 (2010))). Petitioner therefore has not demonstrated entitlement to habeas relief with respect to this claim.

### 4. Appellate Counsel Not Ineffective

In his final habeas claim, Petitioner alleges that his appellate attorney was ineffective for failing to argue in his direct appeal that trial counsel was ineffective for not challenging the lineup as unduly suggestive and for failing to call a witness. To prevail on this claim, Petitioner must demonstrate, as stated in *Strickland*, *supra*, that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Smith v. Robbins*, 528 U.S. 259, 285

(2000) (stating that the proper standard for evaluating the petitioner's claim about appellate counsel is that enunciated in *Strickland*).

Petitioner's appellate counsel was not required to raise all nonfrivolous claims on appeal if counsel, and, as a matter of professional judgment, elected not to raise the claims. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). In fact, "the process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail [] is the hallmark of effective appellate advocacy." *O'Sullivan v. Boerckel*, 526 U.S. 838, 858 (1999) (quotation marks and end citations omitted). Petitioner has not shown that the claims not raised in the appeal of right are "clearly stronger than issues that counsel did present" to the Court of Appeals. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010) (quotation marks and citations omitted). Nor has he demonstrated "a reasonable probability that, but for his counsel's unreasonable failure to raise [his claims] on appeal, he would have prevailed." *Id.* (quotation marks and citation omitted). Consequently, for the reasons stated in section C, 1-3, *supra*, appellate counsel was not ineffective. Petitioner is not entitled to habeas relief regarding this claim.

## IV. CONCLUSION

For the reasons stated, the Court **DENIES** the instant petition.

The Court also will decline to issue a certificate of appealability (COA) to Petitioner. A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this

standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37. When a federal district court denies a habeas claim on procedural grounds without addressing the merits, a COA should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85.

The Court concludes that jurists of reason would not find its assessment of Petitioner's case debatable or wrong. The Court thus declines to issue him a COA.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's "Petition for Writ of Habeas Corpus" [Dkt. # 1] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court **DECLINES** to issue Petitioner a COA.

**IT IS FURTHER ORDERED** that because the Court finds Petitioner's ineffective-assistance-of-counsel claim meritless and is denying the habeas petition, Petitioner's request for an evidentiary hearing is **DENIED** as moot.

                                              s/John Corbett O'Meara
                                              United States District Judge

Date: July 13, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, July 13, 2011, using the ECF system.

s/William Barkholz  
Case Manager